**Jonas MAGNOTTI, Plaintiff–Appellee,**

**v.**

**Walter J. KUNTZ, Individually and in his official capacity as an Officer in the Police Department of New Haven, CT, Defendant–Appellant.**

**No. 313, Docket 90–7497.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 11, 1990.

Decided Nov. 8, 1990.

John R. Williams, Williams & Wise, New Haven, Conn. (D. Kirt Westfall, Williams & Wise, New Haven, Conn., of counsel), for plaintiff-appellee.

Martin S. Echter, Deputy Corp. Counsel of the City of New Haven, New Haven, Conn., for defendant-appellant.

Before KAUFMAN, MAHONEY and WALKER, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Government officials are personally liable for damages when, acting under color of law, they deprive an individual of "any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. The "qualified immunity" doctrine has arisen as a judicially-created counterbalance to this threat of civil punishment. The defense affords not only protection from liability, but, in addition, freedom from suit. This basic principle, which allows police some breathing space in the performance of their duties, informs our decision to reverse the district court's order denying summary judgment to Sergeant Walter Kuntz of the New Haven Police Department.

## BACKGROUND

On Friday, October 15, 1982, four police officers responded to a burglary call at 1413 Quinnipiac Avenue in New Haven, Connecticut. There they apprehended the suspect, Michael Hydock, who insisted he had not committed any crime. He directed the officers to one Jonas Magnotti to confirm his alibi.

Sergeant Richard Fiorello approached Magnotti and advised him that he was investigating an attempted burglary. After Magnotti avoided answering his questions, Fiorello explained that interference with a police investigation could result in his arrest. Magnotti continued his evasive attitude, became abusive, and threatened the officers present with physical harm.

Officer Gloria Muoio attempted to place Magnotti under arrest for these threats and for his failure to cooperate in the investigation. Magnotti physically resisted her efforts, requiring three additional officers to forcibly handcuff him. Magnotti and Hydock were placed in separate patrol cars and were eventually imprisoned.

### A. The Complaint

The following Monday, October 18, Jonas Magnotti and his mother, Birgitta, filed an unsworn Civilian Complaint with the New Haven Police Department, Internal Affairs Division, alleging Magnotti had been subjected to excessive force when arrested. Subsequently, Magnotti was interviewed under oath by Sergeant Kuntz who worked out of Internal Affairs. Magnotti alleged that while being arrested, he was kicked by a woman police officer and knocked to the ground where the police repeatedly beat him. He stated he was later driven to a parking lot where he was removed from Fiorello's patrol car and struck in the face about twenty times.

### B. The Investigation

Kuntz conducted a thorough investigation in response to Magnotti's Civilian Complaint. In this inquiry, the eyewitnesses to the arrest did not confirm Magnotti's story. The four New Haven officers involved in the arrest, and one off-duty policeman from North Haven, all claimed Magnotti had physically resisted arrest, and denied excessive force had been applied. The only

civilian eyewitness, Magnotti's neighbor Susan Serio, claimed she saw the scuffle from a distance of approximately 100 feet. Though she stated Magnotti was struck in the head with a flashlight and kicked in the groin, Magnotti never claimed these events had occurred.

The physical evidence was equally not supportive. Although Magnotti's photograph, taken shortly after the incident, revealed a small bruise on the front of his neck, no other injuries were apparent. Confirmation was provided by a medical examination conducted on the day of the arrest at the Yale New Haven Hospital emergency room. The hospital physician concluded that Magnotti was in good health except for a small bruise on his neck. In addition, a police lieutenant reported to Kuntz that Magnotti had refused to remove his shirt to show marks which he claimed covered his chest and back and, three days after the arrest, Kuntz did not observe any blemishes on Magnotti's face.

## C. The False Statement Charges

Based on this evidence, Sergeant Kuntz obtained an arrest warrant charging Magnotti with making a false statement under oath. *Conn.Gen.Stat.* § 53a–157. A technical defect, however, rendered the warrant invalid. In the warrant application, Kuntz declared the sworn statement was made by Magnotti on October 18, rather than on November 9. By the time the error was discovered, it was too late under the Connecticut statute of limitations to reinstate charges.

Magnotti brought this civil rights action against Kuntz claiming retaliatory prosecution in violation of his First and Fourteenth Amendment rights to criticize government activity. He sought monetary relief pursuant to 42 U.S.C. § 1983, contending that Kuntz filed criminal charges in order to harass him for complaining to the department about the allegedly unlawful arrest.

## PROCEEDINGS BELOW

Kuntz moved for summary judgment alleging that probable cause supported the warrant and, in the alternative, qualified immunity shielded him from civil liability. Judge Eginton of the United States District Court in Connecticut referred the case to Magistrate Arthur H. Latimer for a report and recommendation.

The magistrate concluded that "even 'correcting' the affidavit in every respect urged by plaintiff, it is speculative to argue that a state court judge would not have issued the false statement warrant." Although there "seemed adequate basis for finding probable cause that [Magnotti] had deliberately misrepresented the nature and degree of force used," the magistrate denied the defendant's motion. He concluded that in light of the First Amendment nature of the claim, an inquiry into Kuntz's intent was required on grounds of public policy. Since Magnotti presented a claim of retaliatory prosecution, more than mere probable cause was required for a dismissal of the complaint.

Kuntz then moved before Judge Eginton to challenge the magistrate's ruling. The court concluded that genuine issues of material fact remained as to the accuracy of Kuntz's arrest warrant representations. Because Judge Eginton focused discussion on the accuracy of Kuntz's representations and never expressly rejected the magistrate's findings, it is not clear whether he disagreed with the magistrate's view that probable cause for the warrant sought had been presented.

Kuntz appeals the denial of his summary judgment motion. But, since our decision rests on qualified immunity grounds, we need not determine whether probable cause for the warrant of arrest actually existed. We are required to decide only whether it was objectively reasonable for Kuntz to seek the warrant in the first instance.

## JURISDICTION

Ordinarily, the denial of a summary judgment motion does not present an appealable final order. *See* 28 U.S.C. § 1291.[1] There are exceptions to this rule,

---

**1.** 28 U.S.C. § 1291 states "[t]he courts of appeals

... shall have jurisdiction of appeals from all

however. In general, collateral orders that cannot be effectively reviewed if deferred until adjudication of the entire case are appealable. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). Applying this principle, denials of immunity have been held to constitute final orders. *See Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Such holdings have been found to fall within the collateral order exception because qualified immunity is not a mere defense to liability. It is also a protection against having to defend a lawsuit. Failure to immediately review the denial of Kuntz's motion would clearly forfeit his potential right not to face a trial.

Appellate jurisdiction over this area, however, is not without limitations. We may assess a district court's denial of a qualified immunity claim only to the extent it turns on issues of law. *Id.* at 528, 105 S.Ct. at 2816. If a factual determination is a necessary predicate to the resolution of the suit, we must postpone review. *See P.C. v. McLaughlin*, 913 F.2d 1033, 1039 (2d Cir.1990); *Dube v. State University of New York*, 900 F.2d 587, 595–96 (2d Cir. 1990).

## DISCUSSION

Federal Rule of Civil Procedure 56 provides that "factual allegations in the pleadings of the party opposing the motion for summary judgment, if supported by affidavits or other evidentiary material, should be regarded as true...." *Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983); *see Dube*, 900 F.2d at 597. And, the evidence must be viewed in the light most favorable to the party opposing the motion. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

Magnotti alleges, as we have stated, that Kuntz brought criminal charges against him in violation of his First and Fourteenth Amendment speech rights. This action, he contends, constituted a retaliatory prosecution and permits him to recover damages pursuant to 42 U.S.C. § 1983. His argument, however, fails to sustain the burdens which the law imposes upon him.

Government officials performing discretionary functions are shielded from personal liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Even where the permissible scope of activity is clearly defined, the qualified immunity defense protects an official if it was "objectively reasonable" for him to believe his acts were lawful. *See Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Robison v. Via*, 821 F.2d 913, 920–21 (2d Cir.1987).

We are not presented on this appeal with claims against the arresting officers who allegedly used excessive force during Magnotti's arrest. Instead, we must determine only whether Kuntz should be required to defend himself in a civil action for seeking the warrant of arrest which Magnotti claims was based on false allegations.

■ Unfortunately, neither the magistrate nor the court below squarely addressed the question whether objective probable cause supported Kuntz's action. If qualified immunity did not present grounds for our decision, we would be inclined to remand for a determination whether objective probable cause for the warrant existed. But, when qualified immunity is considered, "the question of immunity remains, as it should, distinct from the question of probable cause." *Warren v. Dwyer*, 906 F.2d 70, 75 (2d Cir.1990); *Washington Square Post # 1212 American Legion v. Maduro*, 907 F.2d 1288, 1289, 1292 (2d Cir.1990). Evidence before the court might be insufficient to sustain a finding of probable cause for the warrant application, yet be adequate for the judge to conclude it was reasonable for Kuntz to believe he had a good basis for his actions. *See Anderson*, 483 U.S. at 641, 107 S.Ct. at

final decisions of the district courts of the United States...."

3039; *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable [*United States v. Leon,* 468 U.S. 897, 923, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984)], will the shield of immunity be lost." *Malley,* 475 U.S. at 344–45, 106 S.Ct. at 1098.

■ It is undisputed that retaliatory prosecution may expose a state official to section 1983 damages. *See Haynesworth v. Miller,* 820 F.2d 1245, 1255–57 (D.C.Cir. 1987). But, the moving party carries a heavy burden of proof in demonstrating the impropriety of a prosecution. *See Gates v. City of Dallas,* 729 F.2d 343, 346 (5th Cir.1984). The mere act of charging someone with criminal perjury or filing a false report does not in itself constitute a constitutional infringement. *Id.*

■ Magnotti argues that charges brought against him were unconstitutionally retaliatory because they were filed in response to his complaints of police misconduct. The only basis for this assertion arises from omissions made in the warrant application. The affidavit, Magnotti contends, neglected to mention he denied to investigators that he refused a request to remove his shirt to show bruises on his body and that Susan Serio, the civilian witness, corroborated his claim of police mistreatment. Moreover, he says the application did not allude to the fact that Magnotti received medical attention as a result of injuries sustained during the incident and Hydock's post-arrest photograph revealed he had been injured during his arrest.

Magnotti argues that Kuntz's deliberate or reckless disregard for the truth established a retributive motive. But, well-established principles instruct that qualified immunity is appropriate if the affidavit accompanying the warrant is sufficient, after correcting for material misstatements or omissions, to support a reasonable officer's belief that probable cause existed. *See Malley,* 475 U.S. at 341, 106 S.Ct. at 1096; *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). This standard has been extended to the civil liability context. *See Krause v. Bennett,* 887 F.2d 362, 372 (2d. Cir.1989); *Olson v. Tyler,* 771 F.2d 277, 281 (7th Cir.1985); *Willocks v. Dodenhoff,* 110 F.R.D. 652 (D.Conn.1986), *affirmed,* 805 F.2d 392 (2d Cir.1987).

Considering Magnotti's claims in a light most favorable to him, we do not believe the alleged omissions raise a genuine issue as to whether an officer in Sergeant Kuntz's position had reasonable grounds to believe probable cause sustained the warrant. *See Washington Square Post,* 907 F.2d at 1291–92. The numerous eyewitness accounts which contradicted Magnotti's version of the arrest and the lack of physical evidence in support of his claims, especially the emergency room examination and the post-arrest photograph, support the conclusion that Kuntz properly asserts qualified immunity and should not be subjected to further court proceedings.

### CONCLUSION

Failing to permit the claims of retaliatory prosecution to proceed to trial in this case does not leave the police without restraints. If a law enforcement officer's belief concerning the presence of probable cause was patently unreasonable or if the activity engaged in was clearly excessive, summary judgment in favor of the defendant would not be appropriate. But, as we have stated, this action was not brought against the officers who allegedly employed excessive force during Magnotti's arrest. Kuntz's activity was limited to investigating Magnotti's complaint and applying for the warrant.

Because we are of the view that an officer in Sergeant Kuntz's position would have had reasonable grounds to believe probable cause supported the warrant of arrest issued against Magnotti, Kuntz's summary judgment motion must prevail. Accordingly, we reverse the district court's order on the grounds set forth in this opinion and remand the case with instructions to grant Kuntz's motion and to enter judgment in his favor.