**Gary MIHALICK, Plaintiff,**

v.

**Brian CAVANAUGH, Richard Beck, Peter Sevetz and Alfred Shull, Defendants.**

**No. 3:95CV1822 (WWE).**

United States District Court, D. Connecticut.

Nov. 5, 1998.

William F. Gallagher, Barbara L. Cox, Gallagher, Gallagher & Calistro, New Haven, CT, Thomas W. Donohue, Egan & Donohue, West Hartford, CT, for Plaintiff.

Stephen P. Fogerty, Robert Avery Rhodes, Halloran & Sage, Westport, CT, William K. Eisenman, Moynahan, Ruskin, Mascolo, Mariani & Minnella, Waterbury, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR MOTION FOR NEW TRIAL OR AN ORDER OF REMITTITUR

EGINTON, Senior District Judge.

In this civil rights action brought pursuant to 42 U.S.C. § 1983, plaintiff, Gary Mihalick, alleges that defendants Brian Cavanaugh, Richard Beck, Peter Sevetz and Alfred Shull violated his First and Fourth Amendment rights when they arrested him without probable cause and investigated and presented disciplinary charges against him to the police commission in retaliation for his union activities.[1] Plaintiff also asserts a state law claim for intentional infliction of emotional distress.

This case was tried before a jury from March 17 to March 20, 1998. The jury found in plaintiff's favor on all counts. Specifically, they found that all four defendants unlawfully retaliated against plaintiff in violation of the First Amendment; that defendants Cavanaugh and Beck falsely arrested plaintiff in violation of the Fourth Amendment[2]; and that all four defendants intentionally inflicted emotional distress on plaintiff. The jury awarded plaintiff compensatory damages totaling $3,000,000, com-

---

1. Plaintiff's due process claim and claims against the individual members of the Board of Commissioners and the First Selectman were dismissed.

2. Because defendants Shull and Sevetz were not involved in preparing the arrest warrant application, they were dismissed from this count. *See* March 20, 1998 Tr. at 8.

prised of $250,000 against each defendant on the First Amendment claim; $500,000 against defendants Cavanaugh and Beck on the Fourth Amendment claim; and $250,000 against each defendant on the intentional infliction of emotional distress claim.

Defendants have moved pursuant to Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure for judgment as a matter of law or, in the alternative, for a new trial or remittitur. For the reasons set forth below, defendants' motion for judgment as a matter of law will be granted on plaintiff's Fourth Amendment false arrest claim and denied as to plaintiff's First Amendment claim and intentional infliction of emotional distress claim. Defendants' motion for a new trial on the remaining counts will be denied and defendants' motion for remittitur will be conditionally granted to $150,000, contingent upon plaintiff's acceptance of this reduced amount. Otherwise, a new trial on damages will be held.

## I. Discussion

### A. Motion for Judgment as a Matter of Law

■■■ The standard for reviewing a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) is well settled. The court must:

> consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on credibility of the witnesses, or substitute its judgment for that of the jury ... Only if there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against [the moving party] may the court properly grant the motion.

*LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 429 (2d Cir.1995) (internal quotation marks and citations omitted).

### 1) Fourth Amendment

Defendants argue, *inter alia,* that they are entitled to judgment as a matter of law regarding plaintiff's Fourth Amendment false arrest claim on the basis of qualified immunity. Defendants asserted this affirmative defense in their answer but the issue was never posited to the court by appropriate motion until defendants moved pursuant to Fed. R.Civ.P. 50(a) for judgment as a matter of law at the close of plaintiff's case. Given the stage of the case, the court reserved ruling on this affirmative defense pending a jury verdict and review of the parties' post trial briefs. *See* March 18, 1998 Tr. at 104. After reviewing the parties' briefs, the trial transcript and the relevant case law, the court finds that defendants are entitled to qualified immunity on this claim.

■■■ Qualified immunity protects government officials performing discretionary functions from liability to the extent their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The right to be free from arrest absent probable cause is a clearly established constitutional right. A police officer is entitled to qualified immunity for an arrest without probable cause if (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest. *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir.1997).

■■■ Generally, the issuance of a warrant by a neutral magistrate creates a presumption that it was objectively reasonable for the officers to believe probable cause existed. A plaintiff attacking the existence of probable cause for the warrant bears a heavy burden. The party must demonstrate that the officer submitting a probable cause affidavit knowingly or intentionally, or with reckless disregard for the truth, made a false

statement in his affidavit or omitted material information, and that such information was necessary to the finding of probable cause. *Golino v. City of New Haven*, 950 F.2d 864, 870–71 (2d Cir.1991).

In determining whether qualified immunity applies in such cases, the court must take out the allegedly false material or supply any omitted information, and then determine whether the contents of the corrected affidavit would have supported a finding of probable cause. If, after adding the omitted material, the warrant is sufficient to support a reasonable officer's belief that probable cause existed, qualified immunity applies. *Soares v. State of Conn.*, 8 F.3d 917, 920 (2d Cir.1993).

Plaintiff alleges that defendants Cavanaugh and Beck are not immune from liability because they deliberately failed in bad faith to include information in the warrant application critical to the issuing judge's evaluation of the veracity of the victim, Elaine Reidy. In particular, plaintiff claims that Cavanaugh and Beck omitted the following information: (1) that Reidy had summoned the police to her home 26 times in the three years preceding the investigation; (2) that Reidy filed a complaint against Officer Polomsky in April 1994 that he was rude to her during a call to her house which was investigated and determined to be unfounded; (3) that Reidy has a history of alcohol abuse; (4) that Reidy has been emotionally or psychologically unstable in the past and has required medical attention for these conditions; and (5) that Reidy made a complaint of sexual assault in July 1993 by an unknown assailant which was never solved.

After adding in the information referenced by plaintiff to the warrant application, a reasonable officer could believe that the application presented probable cause to arrest plaintiff for several reasons. First, contrary to plaintiff's contention, whether officers Cavanaugh and Beck were acting with an improper motive is inconsequential to the issue of whether they are entitled to qualified immunity because the analysis is based upon an objective inquiry, not a subjective one. *Cartier v. Lussier*, 955 F.2d 841, 843 (2d Cir. 1992). Second, despite Reidy's history of

alcohol abuse and psychological problems, there is no evidence in the application that she was incoherent, irrational, confused or intoxicated when she signed her September 9, 1994, statement describing plaintiff's alleged sexual assaults. *See Clay v. Conlee*, 815 F.2d 1164 (8th Cir.1987) (fact that victim had been drinking on night in question was irrelevant to probable cause determination where there was no evidence that victim was incoherent, irrational, confused or intoxicated when she made her statements to the police officers). Also, the statement of the allegations signed by Reidy clearly explains that giving false statements to a law enforcement officer is a criminal violation of Conn.Gen. Stat. § 53a–157. *See Lee v. Sandberg*, 136 F.3d 94 (2d Cir.1997) (qualified immunity applicable to officers for arrest made on warrant where alleged victim warned of criminal consequences of making false statements to law enforcement officers).

Third, the warrant application contains corroborative evidence of Reidy's allegations resulting from the officers' independent investigation. *See Hale v. Fish*, 899 F.2d 390 (5th Cir.1990) (independently obtained corroborating evidence renders affidavit sufficiently trustworthy where victim's reliability is diminished). Reidy made statements to two friends, Christa Menzel and Robert Mitchell, regarding the incidents involving plaintiff. The officers obtained witness statements from both which supports Reidy's account. These statements are referenced in the warrant application. The application also describes the witness statements of four other women alleging that plaintiff engaged in sexually harassing behavior toward them. Based on the corroborating evidence and the fact there is no indication that Reidy was delusional or intoxicated when she made the accusations, it would not be objectively unreasonable for an officer to believe that the corrected affidavit would present probable cause to arrest plaintiff. Accordingly, judgment as a matter of law must be granted and the jury verdict set aside as to this claim.

*2) First Amendment*

Defendants argue that they are entitled to judgment as a matter of law on plaintiff's

First Amendment retaliation claim again on qualified immunity grounds. Defendants also claim that the court erred by finding as a matter of law that plaintiff's union activities were matters of public concern and that there was insufficient evidence to demonstrate that defendants acted with improper motives in the commencement of the investigation and disciplinary proceedings against plaintiff. The court agrees that qualified immunity protects defendants from liability from plaintiff's claim of retaliatory arrest. This defense does not, however, shield defendants from liability for plaintiff's claim that defendants instituted the investigation and the disciplinary/termination proceedings in retaliation for plaintiff's union activities.

█ Qualified immunity protects defendants from a claim of retaliatory arrest where a reasonable officer would believe the arrest warrant was supported by probable cause. *Magnotti v. Kuntz*, 918 F.2d 364 (2d Cir.1990); *see also, Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir.1992) ("An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government"). Based on the court's discussion above, plaintiff cannot sustain a claim of retaliatory arrest under the First Amendment. The Second Circuit in *Blue v. Koren*, 72 F.3d 1075 (2d Cir.1995), however, discussed in a footnote that *Magnotti* and *Morrochi* were limited to arrests but not to "other variations of retaliation claims". *Blue*, 72 F.3d at 1083, n. 5. Thus, qualified immunity does not bar plaintiff's retaliatory investigation and commencement of disciplinary action claim.

█ As to this claim, the court did not err in finding that plaintiff's union activities were matters of public concern subject to First Amendment protection. Matters of public concern relate to any political, social, or other concern of the community. *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Plaintiff testified that when he was union president in 1989 he initiated a no confidence vote in defendant Sevetz and participated in collective bargaining procedures. *See Gardetto v. Mason*, 100 F.3d 803, 813 (10th Cir.1996) (efforts to obtain no confidence vote deemed matter of public concern under First Amendment). These activities are certainly within the concern of the community.

Moreover, there was sufficient circumstantial evidence that defendants acted with improper motives to support the jury's verdict. For instance, there was evidence presented that plaintiff had a confrontational style with regard to his union activities and that Beck wanted "to get" plaintiff. Also, Sevetz testified that he believed that plaintiff commenced the no confidence vote against him.

Finally, defendants claim that based on the time lapse between plaintiff's union activities and the investigation and termination, no reasonable inference could be drawn that the union activities were substantial or motivating factors in defendants' retaliatory conduct. The court, determining that this was an issue for the jury, instructed counsel at the charge conference that they could argue this point to the jury during closing remarks. Obviously, the jury was not persuaded by this argument.

### 3) *Intentional Infliction of Emotional Distress*

█ Defendants claim that there was insufficient evidence to support plaintiff's claim that defendants' conduct was extreme and outrageous and that plaintiff suffered severe emotional harm. Based on the discussion above, the jury could have found that defendants' conduct in commencing the investigation and disciplinary proceedings against plaintiff was based on an improper purpose and therefore extreme and outrageous. Also, contrary to defendants' argument, plaintiff described on the stand his embarrassment and humiliation regarding the arrest, the effect it had on his relationship with his family, and that he has suffered from insomnia since the arrest. Thus, plaintiff proffered sufficient evidence to support his emotional distress claim.

### B. *Motion for a New Trial or Remittitur*

█ Defendants argue that a new trial is warranted because the jury's award is so

outrageous and shocking. Alternatively, defendants seek a significant remittitur given the paucity of evidence on damages of emotional distress. The trial court is permitted to overturn a verdict for excessiveness and order a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a remittitur. The district court can enter a conditional order of remittitur, compelling a plaintiff to choose between reduction of an excessive verdict and a new trial. *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 165 (2d Cir.1998).

Because of the excessiveness of the jury's award, the court's dismissal of plaintiff's Fourth Amendment claim and the likely duplication of recovery for plaintiff's emotional distress, a new trial on damages is warranted. The court, however, will deny defendants' motion on the condition that plaintiff accepts a remittitur to $150,000. The court arrived at this amount by reviewing comparable cases involving damage awards for emotional distress. *See Bender v. City of New York*, 78 F.3d 787 (2d Cir.1996) (remittitur of jury award in civil rights case to $150,000 where award was excessive and duplicative); *Bick v. City of New York*, 1998 WL 190283 (S.D.N.Y. April 21, 1998) (court remitted award to $100,000 for emotional distress injuries resulting from gender discrimination); *Malick v. Carrier Corp.*, 3:95cv1928 (GLG) slip op. December 15, 1997 (remittitur of award to $120,000 for damages for negligent infliction of emotional distress arising out of wrongful termination); *Ikram v. Waterbury Board of Education*, 1997 WL 597111 (D.Conn. Sept.9, 1997) (compensatory award of $100,000 reasonable in First Amendment retaliation claim) and cases cited therein.

### Conclusion

Based on the foregoing discussion, defendants' motion for judgment as a matter of law [# 88–1] is GRANTED on plaintiff's Fourth Amendment false arrest claim and DENIED as to plaintiff's First Amendment claim of retaliation and claim of intentional infliction of emotional distress. Defendants' motion for a new trial [# 88–2] is DENIED and defendants' motion for remittitur [# 88–3] is conditionally GRANTED to $150,000 pending plaintiff's acceptance of this reduced amount. Plaintiff's counsel has 21 days to notify the court and opposing counsel of plaintiff's decision.