Bernard LEWIS, Plaintiff,

v.

UNITED STATES of America and
Ty C. Mueller, Defendants.

No. 03 Civ. 10220(LAP).

United States District Court,
S.D. New York.

March 14, 2005.

Michael J. Andrews, Michael Andrews, P.C., New York, NY, for Plaintiff.

## OPINION AND ORDER

PRESKA, District Judge.

This action arises out of the arrest of Bernard Lewis, a victim of identity theft, for fraudulently obtaining relief from the Federal Emergency Management Agency ("FEMA") in the wake of the September 11, 2001 terrorist attacks. Mr. Lewis ("Plaintiff") filed his complaint on December 24, 2003 (the "Complaint" or "Compl."), asserting claims against the United States of America and Ty C. Mueller ("Mueller") (collectively, "Defendants")

for false arrest, false imprisonment, and malicious prosecution. On June 17, 2004, Defendants moved to dismiss all of the claims in the Complaint or, in the alternative, for summary judgment and to stay discovery. Both parties have filed affidavits and statements pursuant to Local Rule 56.1 and have briefed the standards applicable to motions for summary judgment pursuant to Fed.R.Civ.P. 56. Accordingly, I have considered the motion under Rule 56, and for the reasons stated below, Defendants' motion for summary judgment is granted in its entirety.

## BACKGROUND

After the September 11, 2001 terrorist attacks, President George W. Bush declared New York City a major disaster area, causing FEMA to provide assistance to certain eligible individuals particularly affected by the attacks. See Mueller Decl. ¶ 3.[1] On October 5, 2001, a person purporting to be Bernard Lewis applied for Mortgage/Rental Assistance from FEMA, claiming to have lost his job at the Century 21 department store, which had been located directly across the street from Ground Zero, as a result of the September 11 attacks. See Kleppinger Decl. ¶ 4.[2] In support of his application for assistance, the individual submitted to FEMA pay stubs, an employee photo identification card, a passport, and utility bills, all in the name of Bernard Lewis. See Mueller Decl. ¶ 4. Based on this application, FEMA paid the individual $2,520. See Mueller Decl. ¶ 4.

In 2002, FEMA received a hotline complaint alleging that a person named Bernard Lewis, residing at 218 New York Avenue, Apartment B1, Brooklyn, New York, filed for FEMA Mortgage/Rental

---

1. "Mueller Decl." refers to the Declaration of Ty C. Mueller dated June 15, 2004.

2. "Kleppinger Decl." refers to the Declaration of Edward Kleppinger dated June 15, 2004.

Assistance by providing false documents and statements to substantiate his claim for disaster assistance. Kleppinger Decl. ¶ 3. At the time of the hotline complaint and the subsequent events giving rise to Lewis' Complaint, Ty Mueller, a Special Agent, was based in Atlanta, Georgia, but was working in the New York FEMA Office of the Inspector General ("OIG") [3] on successive two-week rotations. *See* Compl. ¶ 8; Mueller Decl. ¶ 2. On February 25, 2002, Mueller spoke with Cheryl Smith, an employee in Century 21's Human Resource Department. *See* Mueller Decl. ¶ 5. Ms. Smith informed Mueller that the employee identifying himself as Bernard Lewis was terminated on September 3, 2001, rendering him ineligible for the FEMA assistance he had received. *See* Mueller Decl. ¶ 5, Ex. B.

FEMA wrote to the individual identifying himself as Bernard Lewis and requested that he return the $2,520. *See* Kleppinger Decl. ¶ 4. FEMA OIG agents made numerous unsuccessful attempts to locate and interview the suspect believed to be Bernard Lewis. *See* Mueller Decl. ¶ 2; Kleppinger Decl. ¶¶ 5-8; Ex. B–D. Special Agent Edward Kleppinger, another investigator for the FEMA OIG, spoke on the telephone with the man claiming to be Bernard Lewis and planned an in-person interview, but the individual failed to appear for the interview. *See* Kleppinger Decl. ¶ 6. In addition, Kleppinger and another investigator traveled to the address listed on the FEMA application to locate the individual identifying himself as Bernard Lewis. *See* Kleppinger Decl. ¶¶ 5, 7–8. Although the individual was not there, the agents were led to believe that a Mr. Lewis resided at that address. *See* Kleppinger Decl. ¶¶ 5, 7–8.

After multiple unsuccessful attempts to locate the purported Bernard Lewis, and with no basis for questioning the identity of the suspect, on June 19, 2002, Agent Mueller executed an affidavit in support of an arrest warrant for the individual identifying himself as Bernard Lewis. *See* Mueller Decl. ¶ 7, Ex. C; Kleppinger Decl. ¶ 10. The arrest warrant [4] and accompanying affidavit included three counts of Grand Larceny in the Fourth Degree and three counts of Filing a False Instrument in the First Degree. *See* Mueller Decl. Ex. C.

Unbeknownst to any of the investigators at the FEMA OIG, the individual identifying himself as Bernard Lewis was not Mr. Lewis, but a yet-to-be apprehended individual operating under the stolen identity of Bernard Lewis. Mueller Decl. ¶ 8, 9. Consequently, when the arrest warrant was entered into the New York City database, the address for the plaintiff in this case, the actual Bernard Lewis, appeared. *See* Kleppinger Decl. ¶ 10.

On or about October 12, 2002, Mr. Lewis received a letter from the Social Security Administration informing him that his Supplemental Security Income would be stopped because a warrant for his arrest

---

**3.** On March 1, 2003, the FEMA OIG, Department of Treasury OIG, and Department of Justice OIG combined to form the Department of Homeland Security OIG. *See* Kleppinger Decl. ¶ 1.

**4.** The Warrant of Arrest attached as Exhibit C to Agent Mueller's Declaration appears to be a standard form (RC 3057 (3/93)) that is completed by hand, presumably by a clerk in the Criminal Court of the City of New York. In the lower portion of the form under the heading "Arrest Information," the clerk appears to have written Agent Mueller's name in the space provided for the name of the arresting officer and his shield number, agency, and command in the spaces provided for the corresponding details of the arresting officer. The handwriting is consistent throughout the form, and the other arrest information (arrest id, arrest date, and arrest pct.) is omitted.

had been issued on June 19, 2002. Lewis Aff. ¶ 8.[5] Mr. Lewis complied with the instructions in the letter and contacted an officer in the warrant unit of the New York City Police Department. Lewis Aff. ¶ 9. Mr. Lewis met with a non-uniformed law enforcement officer on October 18, 2002 at the Criminal Court of the City of New York at 100 Centre Street, where Mr. Lewis was arrested. Lewis Aff. ¶ 11; Kleppinger Decl. ¶ 10. A New York City Police officer made the arrest, and neither Agent Kleppinger nor Agent Mueller was present at Lewis's arrest. *See* Mueller Decl. ¶ 8; Kleppinger Decl. ¶ 10.

Mr. Lewis was arraigned on October 18, 2002, at which time he learned the nature of the charges he faced. Lewis Aff. ¶ 11. Mr. Lewis attempted to explain to his attorney and the court that his wallet, containing all of his identifying documents, had been stolen and he had never applied for benefits from FEMA. Lewis Aff. ¶ 11. Apparently, FEMA possessed two photographs of the individual who submitted the application to FEMA for disaster relief, but the photographs were not in the courtroom during Lewis' arraignment. Lewis Aff. ¶ 11.

The Criminal Court judge set bail at $3,500, an amount Lewis was not able to pay at the time. Lewis Aff. ¶ 11.[6] Mr. Lewis spent approximately one week in custody before his family posted bail. Lewis Aff. ¶ 12. On October 25, 2002, Mr. Lewis attended a meeting with his counsel, Assistant District Attorney Doug Kaufman, and Special Agent Edward Kleppinger. Lewis Aff. ¶ 12; Kleppinger Decl. Ex. F. During that meeting, the Assistant District Attorney "opened a file, looked into

the file, looked back at [Mr. Lewis], and he then almost immediately stated words to the effect of 'you're not the guy.'" Lewis Aff. ¶ 12. Charges against Mr. Lewis were dismissed by motion of the Assistant District Attorney on December 12, 2002. Lewis Aff. ¶ 12; Cronan Decl. Ex. C. On or about June 2, 2003, Mr. Lewis timely filed an Administrative Claim against defendant the United States of America 'through FEMA. Compl. ¶ 4. Mr. Lewis' Administrative Claim was denied by letter dated July 1, 2003. Cronin Decl. Ex. B.[7]

## DISCUSSION

### I. *The Standard for Summary Judgment*

Under Rule 56, summary judgment shall be rendered if the pleadings, depositions, answers, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. Proc. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact."

---

**5.** "Lewis Aff." refers to the Affidavit of Bernard Lewis dated July 23, 2004.

**6.** Mr. Lewis's affidavit indicates that he was arrested on October 18; FEMA OIG agent Kleppinger's affidavit indicates that Mr. Lew-

is was arrested on Oct. 19. Because this discrepancy does not bear upon my decision here, it need not be resolved.

**7.** "Cronin Decl." refers to the Declaration of John P. Cronan dated June 17, 2004.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The substantive law determines the facts which are material to the outcome of a particular litigation. *See Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Only when it is apparent, however, that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" should summary judgment be granted. *Gallo v. Prudential Residential Servs. Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994).

## II. *Plaintiff's Bivens Claim Against Agent Mueller*

### A. The Standard

▮ Plaintiff seeks relief against Agent Mueller pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in which the Supreme Court held that an individual whose constitutional rights have been violated by a federal officer is entitled to recover money damages against such officer. Under the doctrine of qualified immunity, however, governmental officials performing discretionary functions may be shielded from liability for civil damages "insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Martinez v. Simonetti,* 202 F.3d 625, 633–34 (2d Cir. 2000).

▮ Courts perform a two-part analysis to determine whether an official is entitled to qualified immunity. *See Loria v. Gorman,* 306 F.3d 1271, 1281 (2d Cir. 2002). The threshold inquiry is whether plaintiff's allegations, if true, establish a constitutional violation. *See Hope v. Pelzer,* 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If plaintiff fails to satisfy the first part of the test, there is no need to inquire further; the official is then entitled to qualified immunity. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. However, if plaintiff adequately alleges a constitutional violation, a court must determine whether the constitutional right at issue was clearly established at the time of the alleged infringement. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151.

▮ Even where the right was clearly established at the time of the infringement, a public official is entitled to qualified immunity if he "reasonably believed that his actions did not violate plaintiff's rights ... even if that belief was mistaken." *See Loria,* 306 F.3d at 1282; *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir. 1990). In addition, the existence of probable cause affords an officer qualified immunity from liability, as it is absolute defense to claims of false arrest, false imprisonment, or malicious prosecution. *See Jack-*

son v. City of New York, No. 00 Civ. 1206, 2004 WL 895609, at *4 (S.D.N.Y. Apr. 26, 2004). Probable cause to arrest exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir.2002). "In order to be entitled to summary judgment on such a defense, the officer must adduce sufficient facts that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff, could conclude that it was objectively unreasonable for the officer to believe that probable cause did not exist." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991) (citations omitted). The primary focus of this inquiry is the body of knowledge available to the officer immediately before, and at the time of, the arrest. See Caldarola, 298 F.3d at 162.

### B. Application

Here, I assume without deciding that, assuming the truth of Plaintiff's allegations, a constitutional violation is established and that it was clearly established at the time of the alleged infringement. Thus, I proceed to determine whether Special Agent Mueller "reasonably believed that his actions did not violate [P]laintiff's rights ... even if that belief was mistaken." See Loria, 306 F.3d at 1282.

At the outset, I note that Plaintiff has not clearly alleged that Agent Mueller was present at the time of his arrest. When describing the events surrounding his arrest, Plaintiff does not once mention Agent Mueller. See Lewis Aff. ¶¶ 10–12. Plaintiff admits that he is not aware of the identity of the officer who arrested him and, as such, neither admits nor denies the allegation that Agent Mueller was not present at the time of Plaintiff's arrest. See Lewis Local Rule 56.1 Counter Statement of Material Facts ¶ 8. In addition, Plaintiff asserts in an affidavit dated July 23, 2004 that he was arrested by a non-uniformed officer he met with as a result of telephoning the Warrant Unit of the New York City Police Department. Lewis Aff. ¶ 10–11. He does not allege that he was arrested by Agent Mueller. At the time of Plaintiff's arrest, Agent Mueller avers, without dispute, that he was involved in a trial outside of New York and was therefore not present for Plaintiff's arrest. Mueller Decl. ¶ 8. Because Plaintiff has not asserted otherwise, I must find that Agent Mueller was not present at the arrest and thus is entitled to summary judgment on the claim.

Furthermore, the warrant pursuant to which Mr. Lewis was arrested was issued by a neutral magistrate, automatically inuring Agent Mueller with qualified immunity. See Golino, 950 F.2d at 870 (holding that a warrant issued by a neutral magistrate creates presumption that officers' belief in probable cause was objectively reasonable). For Plaintiff to challenge that immunity, he would have to "make a 'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was 'necessary to the finding of probable cause.'" Golino, 950 F.2d at 870 (quoting Franks v. Delaware, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). Mr. Lewis has failed to make any such allegations. Accordingly, there is no genuine issue of material fact with respect to Plaintiff's Bivens claim, and judgment in favor of Agent Mueller is appropriate under Rule 56.

### III. Plaintiff's Claims Against Agent Mueller Under New York Tort Law

Plaintiff also seeks relief against Agent Mueller for the Agent's al-

leged violation of New York common law. Compl. ¶ 20, 38. However, Plaintiff's state tort claims against Agent Mueller are statutorily barred by the Federal Tort Claims Act ("FTCA"), which provides that an action against the United States is the exclusive remedy for injury or loss of property resulting from the negligent or wrongful act of any employee of the United States Government while acting within the scope of his employment. *See* 28 U.S.C. § 2679(b)(1). In addition, federal officers such as Agent Mueller are immune from state liability when acting within the scope of their employment. *See Barr v. Matteo,* 360 U.S. 564, 572–73, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *United States v. Smith,* 499 U.S. 160, 166–67, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991); *Williams v. City of Portsmouth,* 538 F.Supp. 74, 76 (E.D.Va.1982), and there is no allegation or evidence in the record to the effect that Agent Mueller was outside the scope of his employment during the events at issue.

Plaintiff's reliance on *Brown v. State* as a basis for relief is misplaced. In that case, the New York Court of Appeals held that a cause of action to recover damages may be asserted against the State for state constitutional violations. *See Brown v. State,* 89 N.Y.2d 172, 188, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996). Although the facts in the case are somewhat analogous to those in the instant case, analogy does not equate to precedent. The New York Court of Appeals could have, and did not, extend its decision to provide a remedy against federal officers for state constitutional violations.

The FTCA's statutory bar of Plaintiff's New York tort law claims against Agent Mueller and the Agent's immunity from state law claims demonstrate that Defendants are entitled to judgment as a matter of law on this issue.

## IV. *Plaintiff's FTCA Claims*

Plaintiff asserts causes of action against the United States of America pursuant to the FTCA for false arrest, false imprisonment, and malicious prosecution. Compl. ¶¶ 19, 37. Under 28 U.S.C. § 2680(h) of the FTCA, the United States waives its sovereign immunity "with regard to acts or omissions of investigative or law enforcement officers of the United States Government … [on] any claim arising … out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." Pursuant to 28 U.S.C. § 1346(b), such liability is to be determined "in accordance with the law of the place where the act or omission occurred." Because the detention of Mr. Lewis occurred in New York State, New York law applies.

### A. False Arrest and False Imprisonment

 In New York, there is no legal distinction between false arrest and false imprisonment. *See, e.g., Posr v. Doherty,* 944 F.2d 91, 96 (2d Cir.1991); *Jackson v. Police Dep't of City of New York,* 86 A.D.2d 860, 860–61, 447 N.Y.S.2d 320 (2d Dep't 1982). The elements of false arrest are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Bernard,* 25 F.3d at 102. A finding of probable cause is a complete defense to an action for false arrest. *Id.* (citing *Zanghi v. Incorporated Village of Old Brookville,* 752 F.2d 42, 45 (2d Cir.1985)).

██ Mr. Lewis' false arrest claim cannot prevail because Mr. Lewis was arrested pursuant to a valid warrant. *See Broughton,* 37 N.Y.2d at 457, 373 N.Y.S.2d 87, 335 N.E.2d 310; *St. John v. Town of Marlborough,* 163 A.D.2d 761, 762, 558 N.Y.S.2d 332 (3d Dep't 1990) ("An arrest

warrant validly issued by a court having jurisdiction precludes an action for false arrest against the municipality and the police officers involved with its execution."). Therefore, there is no genuine issue of material fact regarding Plaintiff's false arrest and false imprisonment claims, and Defendants are entitled to judgment as a matter of law.

### B. Malicious Prosecution

■ To recover on a claim of malicious prosecution in New York, a plaintiff must establish that: (1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted in actual malice. *Russo v. State of New York*, 672 F.2d 1014, 1018 (2d Cir.1982) (citations omitted).

■ Mr. Lewis has not proffered any evidence from which a fact finder could find that the criminal proceeding was instituted with actual malice. In fact, the information available to Agent Mueller at the time he executed his affidavit in support of the arrest warrant overwhelmingly indicated that there was probable cause for the issuance of the warrant. *See* Mueller Decl. Ex. C. For these reasons, Defendant the United States of America is entitled to summary judgment on Plaintiff's malicious prosecution claim.

### V. *Plaintiff's Request to Amend the Complaint*

■ Plaintiff requests the opportunity to amend his Complaint in order to state with more particularity the reasons there was no probable cause for his arrest. Lewis Aff. ¶ 15. A plaintiff need not be afforded the opportunity to amend his complaint prior to its dismissal for failure to state a claim if there is no possibility that the amended complaint would succeed. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir.1999). Because there was probable cause to arrest Mr. Lewis, I find that there are no additional facts he can plead which will transform his Complaint into one upon which relief can be granted.

■ At the heart of Mr. Lewis' Complaint is the undisputed fact that there exists a FEMA file containing all of the documents related to the fraud for which Mr. Lewis was arrested and imprisoned, including, by all accounts, one or more photographs of the individual who wrongfully assumed the identity of Mr. Lewis. *See* Kleppinger Decl. Ex. F; Lewis Aff. ¶ 12. It is undisputed that neither the arresting New York City police officer nor the Assistant District Attorney present at the arraignment was in possession of this FEMA file. *See* Lewis Aff. ¶ 11, 12. Similarly, Mr. Lewis has not alleged that Agent Mueller had the opportunity to compare the photos that apparently reside in the FEMA file with a photograph of Mr. Lewis or Mr. Lewis himself prior to executing his affidavit in support of the arrest warrant. Mr. Lewis acknowledges that he was arrested by a non-uniformed officer who he made an appointment to meet through the New York City Warrant Unit. Lewis Aff. ¶ 10; Ex. 6. The undisputed evidence shows, therefore, that Agent Mueller never had the opportunity to compare the likeness of the suspect with that of Mr. Lewis. Agent Mueller's sole action was executing the affidavit in support of Mr. Lewis' arrest. Mueller Decl. Ex. C. At that time, it is clear that probable cause existed for the issuance of an arrest warrant. Mr. Lewis has not alleged that Agent Mueller or any other FEMA agent was present at his arrest and arraignment. Mr. Lewis' arrest, confinement, and release resulted from an unfortunate string

of events that apparently caused the FEMA file (and its exonerating photographs) to be elsewhere on the day of Mr. Lewis' arrest and arraignment. Because of the existence of probable cause for the arrest, however, further pleading would be futile, and summary judgment is appropriate.

CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment [Docket No. 6] is granted. The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED.