No. 2--05--0774           filed: 3/6/06

_____

# IN THE

## APPELLATE COURT OF ILLINOIS

## SECOND DISTRICT

_____

| | | |
|---|---|---|
| JAMES SCHLICHER, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 03--MR--224 |
| | ) | |
| THE BOARD OF FIRE AND POLICE | ) | |
| COMMISSIONERS OF THE VILLAGE | ) | |
| OF WESTMONT, THE VILLAGE OF | ) | |
| WESTMONT, RAY BOTCH, Indiv. and in | ) | |
| His Official Capacity as Village Manager of the | ) | |
| Village of Westmont, ZBIGNIEW "JERRY" | ) | |
| ZYWCZYK, Indiv. and in His Former Official | ) | |
| Capacity as Police Chief, RANDY STICHA, | ) | |
| Indiv. and in His Official Capacity as Police | ) | |
| Chief, and JOHN F. BRIGHT, | ) | Honorable |
| | ) | Edward R. Duncan, Jr., |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, James Schlicher, appeals the trial court's dismissal of his third amended complaint, which alleged that defendants, the Board of Fire and Police Commissioners of the Village of Westmont (Board), the Village of Westmont (Village), Ray Botch (both individually and in his official capacity as village manager), Zbigniew Zywczyk (both individually and in his former official capacity as police chief), Randy Sticha (both individually and in his official capacity as police chief), and John Bright, wrongfully caused

him to be bypassed for promotion to the rank of sergeant in the Westmont police department. For the reasons that follow, we affirm in part, reverse in part, and remand the cause.

In his third amended complaint, plaintiff alleged as follows. The Board maintained a sergeant promotion eligibility list, which ranked the top seven candidates eligible for promotion to the level of sergeant and provided an evaluative score for each candidate. After an officer named on the list was promoted, his name was removed from the list and the names of those officers ranked below him ascended one spot on the list. Under Illinois law, an officer's name must be removed from the promotion list after it has appeared on the list for three years.

On the May 2000 list, the top three candidates, who had scores of 78.98, 76.15, and 75.56, were later promoted after each of their names rose to the top of the promotion list. Plaintiff's name appeared fourth on the list with a score of 75.35, and Bright's name appeared fifth, with a score of 75.20. From 1976 until January 2003, a span that included the promotion of 26 police officers, the Board always promoted the officer ranked first on the list.

In May 1999, Sergeant Ronald Rizzo tendered a letter of retirement to the then police chief, Zywczyk. Plaintiff claimed that Zywczyk promoted Officer Thomas Mulhearn to the rank of sergeant in May 1999 despite the fact that Rizzo worked in that rank until July 1999. However, we note that, elsewhere in the complaint, plaintiff asserted that Mulhearn was promoted to the rank of sergeant in 1996.

In May 1999, 2000, and early 2002, plaintiff served as a union representative, and he negotiated with the Village on issues such as salary, "comp time," collective bargaining

agreement language, and 12-hour shifts. In April or May 2002, plaintiff was involved in an investigation of former deputy chief Larry Harrison, who resigned as a result of the investigation.

In July 2002, plaintiff discovered that former police chief Zywczyk had altered his "promotional evaluation points" from 90 to 60 and that his rank on the May 2000 promotion list would have been higher but for this deduction. Plaintiff alleged that the reduction "pertained to plaintiff's union activity."

On January 6, 2003, the Village passed Ordinance No. 03--14, which, inter alia, reduced from seven to six the number of sergeants working for the Village. Village of Westmont, Ordinance No. 03--14 (eff. January 6, 2003).

On January 21, 2003, the Board promoted Bright to the rank of sergeant despite the fact that, at the time of his promotion, he was listed second on the eligibility list and plaintiff was listed first. Though plaintiff does not raise the point in his third amended complaint, the minutes of the January 14, 2003, Board meeting indicate that the Board announced it would choose the officer to promote from among the top three candidates, and plaintiff acknowledged his understanding of this rule.

In April 2003, Sergeant James Farley submitted a letter of resignation, effective June 2003. Chief Sticha did not promote plaintiff to fill Farley's vacancy, but instead allowed the May 2000 promotion list to expire in May 2003. Plaintiff's third amended complaint does not state whether Farley's position was filled.

Plaintiff eventually filed his third amended complaint, seeking administrative review of the Board's bypassing him for promotion (count I), alleging that Ordinance No. 03--14 constituted intentional interference with a prospective economic advantage (count II), and

alleging that Ordinance No. 03--14 was enacted and enforced as retaliation for his union activities (count III).  The trial court heard argument on the latter two counts on December 9, 2004, and dismissed them pursuant to section 2--619 of the Code of Civil Procedure (Code) (735 ILCS 5/2--619 (West 2002)), based on its conclusion that defendants were immune under the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1--101 et seq. (West 2002)).  On July 7, 2005, after reviewing the record, the trial court dismissed plaintiff's count for administrative review, on the ground that the Board's decision was not clearly erroneous.  Plaintiff timely appeals.

At the outset, we note defendants' assertion that several of plaintiff's arguments should be deemed waived for various reasons.  However, waiver is a limitation upon the parties, not the courts (In re Marriage of Kostusik, 361 Ill. App. 3d 103, 114 (2005)), and, in light of the fact that defendants were able to address all the arguments they seek to have deemed waived, we decline to invoke waiver in this case.

Plaintiff's first contention is that the Board's decision to bypass him for promotion was arbitrary and capricious.  In reviewing a final administrative decision under the Administrative Review Law (735 ILCS 5/3--101 et seq. (West 2002)), our role is to review the administrative decision, not the trial court's determination.  Du Page County Airport Authority v. Department of Revenue, 358 Ill. App. 3d 476, 481 (2005).  The standard of review applicable to an agency's decision depends on the type of question presented.  AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 390 (2001).  An agency's findings of fact will be upheld unless against the manifest weight of the evidence, i.e., unless the opposite conclusion is clearly evident.  Du Page County Airport Authority, 358 Ill. App. 3d at 482.  On the other hand, an agency's rulings on

questions of law are reviewed de novo. City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 205 (1998). Mixed questions of law and fact, in which the facts and law are undisputed and the only issue is whether the facts satisfy the settled statutory standard, receive review under the clearly-erroneous standard. Du Page County Airport Authority, 358 Ill. App. 3d at 482. A decision is clearly erroneous only if the reviewing court is left with a definite and firm conviction that a mistake has been committed. AFM Messenger, 198 Ill. 2d at 395. The parties agree that the clearly-erroneous standard should apply to our review of the Board's promotion decision.

Section 10--2.1--15 of the Illinois Municipal Code (65 ILCS 5/10--2.1--15 (West 2002)), which plaintiff avers applies here, provides for promotions in fire and police departments as follows:

"The board, by its rules, shall provide for promotion in the fire and police departments on the basis of ascertained merit and seniority in service and examination, and shall provide in all cases, where it is practicable, that vacancies shall be filled by promotion. *** All promotions shall be made from the 3 having the highest rating [sic], and where there are less than 3 names on the promotional eligible register, as originally posted, or remaining thereon after appointments have been made therefrom, appointments to fill existing vacancies shall be made from those names or name remaining on the promotional register ***. *** The board shall strike off the names of candidates for promotional appointment after they have remained thereon for more than 3 years, provided there is no vacancy existing which can be filled from the promotional register."

The above-quoted statute provides that the Board may choose from any of the three highest-rated candidates on its promotion list. Thus, the Board complied with the statute when it promoted Bright, the second-rated candidate, instead of plaintiff, the top-rated candidate. Plaintiff does not challenge that both officers were qualified for promotion, and we note that they obtained near-identical promotion evaluation scores (plaintiff obtained a 75.35 score, while Bright obtained a 75.20). Therefore, the Board's decision to promote Bright over plaintiff was not clearly erroneous.

Plaintiff's primary argument is not that the Board's decision was clearly erroneous, but that, notwithstanding the Board's statutory discretion to promote any of the top three candidates, the Board established a historical policy of promoting the officer ranked first on the promotion list and that policy controls the Board's statutory discretion. We disagree. The question of the Board's authority is a matter of law, which we review de novo. Du Page County Airport Authority, 358 Ill. App. 3d at 482-84 (questions of law arising out of administrative review are reviewed de novo). Given the language above, that "[a]ll promotions shall be made from the 3 having the highest rating" (emphasis added), we doubt that such a policy by the Board would be valid in the first place. See Hill v. Galesburg Community School District 205, 346 Ill. App. 3d 515, 519 ("Legislative use of the word 'may' indicates a permissive or directory reading, while use of the word 'shall' indicates a mandatory meaning"). However, to the extent the Board did have a policy of promoting the top candidate from the list, and to the extent such a policy would be allowed under the above-quoted statute, such a policy would have been created at the discretion of the Board, which could at its discretion reverse the policy so long as it communicated its new policy to those affected.

Plaintiff argues that the Board was without power to reverse its historical policy, because he obtained a vested right to promotion. Plaintiff's vested right argument essentially presupposes that the Board was obligated to select him for promotion once there was a vacancy while his name appeared at the top of the promotion list. As discussed above, the Board had discretion to choose whom to promote from among the top three candidates. Therefore, we reject plaintiff's vested right argument.

Plaintiff's citation to Hermes v. Hein, 742 F.2d 350 (7th Cir. 1984), does not convince us to the contrary. In Hermes, the plaintiffs argued a due process right to promotions, claiming to have property interests in the promotions pursuant to a police department policy to promote the top-rated candidate instead of choosing from among the top three candidates. Hermes, 742 F.2d at 354-55. The Seventh Circuit rejected the claim because there was no evidence that the policy was ever promulgated throughout the police department or stated to the plaintiffs. Hermes, 742 F.2d at 355. "In the absence of such communication, [the court could] not conclude that the record reflect[ed] a rule or mutually explicit understanding sufficient to establish a *** property interest." Hermes, 742 F.2d at 355. Here, as noted above, the Board communicated exactly the opposite policy to plaintiff: at a Board meeting before Bright was selected for promotion, the Board indicated, and plaintiff indicated that he understood, that the Board would choose from among the top three candidates. Thus, the explicit understanding of the parties was actually that the Board had discretion to bypass the top-rated candidate for promotion.

Plaintiff's second contention is that Ordinance No. 03--14, which reduced the number of sergeants from 7 to 6, was retroactively applied against him, thus depriving him of a vested right to promotion. We agree with defendants that the ordinance was enacted

on January 6, 2003, and the ensuing reduction of sergeant positions did not affect plaintiff before that date. We take the crux of plaintiff's argument here to be that the ordinance nonetheless had retroactive effect because it reduced the number of sergeant positions during what was anticipated to be the life of the eligibility list, i.e., it reduced the number of sergeant positions before the eligibility list expired. However, plaintiff premises this argument on the assertion that he enjoyed a vested right to promotion, and, as explained above, no such vested right existed. Therefore, we reject plaintiff's second contention.

Plaintiff third contention is that his name should not have been stricken from the promotion list because, once Farley retired, under the plain language of the above-quoted statute, the Board was required to promote someone from the list to fill Farley's position before allowing any names on the list to expire. Plaintiff cites the language from the statute requiring that the Board "shall strike off the names of candidates for promotional appointment after they have remained thereon for more than 3 years, provided there is no vacancy existing which can be filled from the promotional register." (Emphasis added.) 65 ILCS 5/10--2.1--15 (West 2002). However, according to plaintiff's third amended complaint, Farley's retirement did not take effect until June 2003, one month after plaintiff's name was removed from the promotion list. Thus, plaintiff did not allege that there was a "vacancy existing" at the time his name was removed from the list. Nor does plaintiff's allegation that the Board had previously filled a retiring officer's position before his retirement date change this result. " '[A] single instance *** would not constitute, as a matter of law, custom or practice' " so as to establish that the Board was in the practice of declaring an officer's position vacant for purposes of promotion before that officer's effective resignation. Stephens v. Metropolitan Water Reclamation District of Greater Chicago, 218 Ill. App. 3d

715, 717 (1991) (concluding that a single instance of promoting from the top of a list did not establish a practice of doing so that would overcome the municipality's authority to promote any of the top three candidates).

Plaintiff's fourth contention is that the Village's enactment of Ordinance No. 03--14 constituted an intentional interference with plaintiff's prospective economic advantage. Based on defendants' affirmative defense of immunity, the trial court dismissed plaintiff's claim pursuant to section 2--619 of the Code (735 ILCS 5/2--619 (West 2002)).

Section 2--619(a)(9) of the Code allows involuntary dismissal of a plaintiff's claim where a claim is " 'barred by other affirmative matter avoiding the legal effect of or defeating the claim.' " Van Meter v. Darien Park District, 207 Ill. 2d 359, 377 (2003), quoting 735 ILCS 5/2--619(a)(9) (West 1994). Immunity from suit under the Act is an "affirmative matter" properly raised under section 2--619(a)(9). Van Meter, 207 Ill. 2d at 377. The affirmative matter asserted by the movant in a section 2--619 motion must be apparent on the face of the complaint; otherwise, the motion must be supported by affidavits or certain other evidentiary materials. Van Meter, 207 Ill. 2d at 377. The question for a court reviewing a dismissal under section 2--619 is whether the existence of a genuine issue of material fact as to the affirmative defense should have precluded the dismissal or whether dismissal was proper as a matter of law. Van Meter, 207 Ill. 2d at 377-78. Our review of such a question of law is de novo. Van Meter, 207 Ill. 2d at 377.

The purpose of the Act is to protect local public entities and public employees from liability arising from the operation of government. Village of Bloomingdale v. CDG Enterprises, Inc., 196 Ill. 2d 484, 490 (2001), citing 745 ILCS 10/1--101.1(a) (West 1998). Section 2--103 of the Act provides that "[a] local public entity is not liable for an injury

caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2--103 (West 2002). Likewise, section 2--205 of the Act provides that "[a] public employee is not liable for an injury caused by his adoption of, or failure to adopt, an enactment, or by his failure to enforce any law." 745 ILCS 10/2--205 (West 2002). Plaintiff does not challenge defendants' assertion that all of the named defendants fall within the coverage of the Act (see 745 ILCS 10/1--101.1 (West 2002) (scope of Act); 745 ILCS 10/1--202 (West 2002) (definition of "employee")). Instead, plaintiff argues that defendants' enacting and enforcing Ordinance No. 03--14 constituted "willful and wanton" conduct as defined in section 1--210 of the Act (745 ILCS 10/1--210 (West 2002)) and thus that immunity does not apply. However, as the trial court noted, our supreme court has observed that "when the legislature [has] intended to limit an immunity to cover only negligence and not willful and wanton misconduct, it [has] 'unambiguously done so.' " Village of Bloomingdale, 196 Ill. 2d at 491, quoting Barnett v. Zion Park District, 171 Ill. 2d 378, 391 (1996). For example, section 2--202 of the Act (745 ILCS 10/2--202 (West 2002)) provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." (Emphasis added.) Thus, the supreme court has concluded, the Act provides immunity for willful and wanton conduct unless the plain language of the applicable section of the Act indicates otherwise. Village of Bloomingdale, 196 Ill. 2d at 492-93. The sections of the Act applicable here contain no exception for willful and wanton conduct. Therefore, we reject plaintiff's argument that the Act does not apply because defendants' acts were willful and wanton.

Plaintiff's fifth contention is that he stated a viable claim under section 1983 of the Civil Rights Act of 1871 (42 U.S.C. §1983 (2000)) by alleging that the Village's passage of Ordinance No. 03--14 was retaliation for his first amendment-protected activities as a union representative and his investigation of former Deputy Chief Harrison. Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights. Conn v. Gabbert, 526 U.S. 286, 290, 143 L. Ed. 2d 399, 405, 119 S. Ct. 1292, 1295 (1999). Plaintiff pressed a claim under section 1983 for first amendment retaliation, but the trial court dismissed the claim under section 2--619 of the Code on the basis of defendants' federal tort immunity. The interpretation of the scope of defendants' immunity presents a question of law, which we review de novo. Perez v. Ellington, 421 F.3d 1128, 1133 (10th Cir. 2005).

Generally, a government may not deny a benefit on a basis that infringes constitutionally protected interests, such as the interest in freedom of speech under the first amendment (U.S. Const., amend. I). Perry v. Sindermann, 408 U.S. 593, 597, 33 L. Ed. 2d 570, 577, 92 S. Ct. 2694, 2697 (1972). Thus, a government "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142, 75 L. Ed. 2d 708, 716-17, 103 S. Ct. 1684, 1687 (1983).

Defendants argue that they are absolutely immune from plaintiff's first amendment retaliation claim. Under the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2), state immunity defenses, such as the Act, cannot control claims such as plaintiff's federal section 1983 claim. Anderson v. Village of Forest Park, 238 Ill. App. 3d 83, 92 (1992). However, the United States Supreme Court has clearly articulated that,

under federal law, "local legislators are *** absolutely immune from suit under §1983 for their legislative activities."  Bogan v. Scott-Harris, 523 U.S. 44, 49, 140 L. Ed. 2d 79, 85, 118 S. Ct. 966, 970 (1998).  Here, the Village's enactment of Ordinance No. 03--14 was legislative, and, therefore, federal absolute immunity applies to defeat plaintiff's claim.

Plaintiff highlights the Supreme Court's declaration that "legitimate" legislative activity is immune (Bogan, 523 U.S. at 54, 140 L. Ed. 2d at 88, 103 S. Ct. at 972), and he argues that, because Ordinance No. 03--14 was enacted in retaliation for his exercise of his first amendment rights, it is not a "legitimate" legislative act.  However, the Village's subjective intent is irrelevant to the question of its immunity, and, so long as the complained-of actions were legislative, absolute immunity applies to local legislators even against claims of first amendment retaliation.  Bogan, 523 U.S. at 54, 140 L. Ed. 2d at 88, 103 S. Ct. at 972-73.

In his sixth argument, plaintiff offers two additional bases, aside from the enactment of the ordinance, for his section 1983 claim for first amendment retaliation.  First, he alleges that, in retaliation for plaintiff's union involvement, Sticha delayed filling the sergeant position vacated by Farley's retirement until after plaintiff's eligibility on the May 2000 promotion list expired.  Second, he alleges that Zywczyk lowered plaintiff's evaluation

points in retaliation for his union involvement.[1]   Because neither of defendants' alleged actions is a legislative action, the absolute immunity provided in Bogan does not apply.

Defendants argue that, notwithstanding the inapplicability of absolute legislative immunity, Sticha and Zywczyk are entitled to qualified immunity for their official acts in operating the police department.  When sued in their individual capacities, "government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages[, including claims under section 1983,] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Wilson v. Layne, 526 U.S. 603, 609, 143 L. Ed. 2d 818, 827, 119 S. Ct. 1692, 1696 (1999), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 410, 102 S. Ct. 2727, 2738 (1982).  "Thus a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Conn, 526 U.S. at 290, 143 L. Ed. 2d at 405, 119 S. Ct. at 1295.

---

[1] The third amended complaint also alleged that defendants retaliated against plaintiff for his involvement in an investigation of former Deputy Chief Harrison, but the complaint alleged that the retaliatory action was the enactment of Ordinance No. 03--14, which is a legislative function subject to absolute immunity.

The question of whether an official's conduct was objectively reasonable so that he may receive qualified immunity is a question of law, which we review de novo. Evett v. DETNTFF, 330 F.3d 681, 687 (5th Cir. 2003).

At the outset, we must determine the alleged constitutional right at issue. Defendants characterize plaintiff's claim as alleging that plaintiff had a clearly established constitutional right to have Sticha issue a promotion before Farley's retirement date, and they argue that the assertion of such a constitutional right is absurd. However, plaintiff does not allege that prompt promotion and a high evaluation score are constitutional rights. Instead, he alleges that his promotion was delayed and his evaluation score lowered as retaliation for his exercise of his clearly established first amendment right to participate in union activities. The question, then, is whether plaintiff's union activities are protected first amendment expression and, if so, whether plaintiff's right was so "clearly established" that a reasonable person in Sticha's or Zywczyk's position would have known of its existence.

Both plaintiff and defendants refer to the four-part test, articulated in Beach v. City of Olathe, 185 F. Supp. 2d 1229 (D. Kan. 2002), for determining whether a plaintiff's actions are constitutionally protected and can give rise to a first amendment retaliation suit:

"First, the court must determine whether plaintiff's speech and associational activities touched upon matters of public concern. [Connick, 461 U.S. at 146, 75 L. Ed. 2d at 719, 103 S. Ct. at 1690.] If so, the court must determine whether plaintiff's interest in the speech and associational activities outweighs defendants' interest in regulating the speech and associational activities ***. [Pickering v. Board of Education of Township High School District 205, 391 U.S. 563, 568, 20 L. Ed. 2d 811, 817, 88 S. Ct. 1731, 1734 (1968).] If the court determines that plaintiff's

interest in the speech and associational activities outweighs defendants' interest, then plaintiff bears the burden to show that the speech and associational activities were substantial or motivating factors in the challenged actions taken against him. [Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 50 L. Ed. 2d 471, 484, 97 S. Ct. 568, 576 (1977).] Finally, if plaintiff shows that the speech and associational activities were substantial or motivating factors in the actions taken against him, then defendants may avoid liability by demonstrating that they would have taken the same actions against plaintiff regardless of his expression of the protected speech or his associational activities." Beach, 185 F. Supp. 2d at 1236-37.

The first and second parts of the above test[2] present questions of law (McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005)), which we may address in our de novo review of the trial court's dismissal of plaintiff's claim under section 2--619 of the Code.

---

[2] Participation in a union is an associational act. See Cobb v. Pozzi, 363 F.3d 89, 101 (2nd Cir. 2004). We recognize that there is a split among the federal circuits regarding

whether the "public concern" requirement applies to associational claims as well as speech

claims.  See <u>Balton v. City of Milwaukee</u>, 133 F.3d 1036, 1040 (7th Cir. 1998) (recognizing

circuit split).  However, because we conclude below that plaintiff's union activities implicate

a public concern, the split of authority becomes immaterial to our resolution of the case,

and we do not address it further.

Matters of public concern relate to any political, social, or other concern of the community. Connick, 461 U.S. at 146, 75 L. Ed. 2d at 719, 103 S. Ct. at 1690. Defendants argue that plaintiff's union activities concerned only personal interests, such as salary and shift length. However, the clear weight of authority holds to the contrary. E.g., Monks v. Marlinga, 923 F.2d 423, 424 (6th Cir. 1991) (allegation that employees were dismissed "in substantial part" because they were "active in union activities" sufficient under federal notice pleading to state a claim for first amendment retaliation); Labov v. Lalley, 809 F.2d 220, 222-23 (3d Cir. 1987) ("Plainly efforts of public employees to associate together for the purpose of collective bargaining involve associational interests which the first amendment protects from hostile state action"); Boals v. Gray, 775 F.2d 686, 693 (6th Cir. 1985) ("We have no doubt that an employee who is disciplined solely in retaliation for his membership in and support of a union states a valid first amendment claim"); Henderson v. Huecker, 744 F.2d 640, 645 (8th Cir. 1984) ("Union membership is protected by the right of association guaranteed by the first and fourteenth amendments"); McGill v. Board of Education of Pekin Elementary School District No. 108, 602 F.2d 774, 778 n.6 (7th Cir. 1979) (advocacy of a collective bargaining agreement to other employees "is clearly a matter of public concern"); International Ass'n of Firefighters Local 3233 v. Frenchtown Charter Township, 246 F. Supp. 2d 734, 738 (E.D. Mich. 2003) ("collective bargaining is a matter of public concern"); Mihalick v. Cavanaugh, 26 F. Supp. 2d 391, 396 (D. Conn. 1998) (participation in collective bargaining procedures a public concern); DeLoreto v. Ment, 944 F. Supp. 1023, 1034 (D. Conn. 1996) ("A state employer may not retaliate against an individual, such as by terminating his or her employment, because of his or her

union activities," and "courts have repeatedly held that discrimination against public employees because of their union membership is actionable under section 1983").

Under the second part of the four-part test articulated in Beach, we see no legitimate governmental interest in defendants' curtailing union participation and negotiation, as plaintiff alleges defendants have done here. While many first amendment retaliation cases involve an otherwise protected activity that nevertheless disrupts the workplace (e.g., Connick, 461 U.S. at 151-53, 75 L. Ed. 2d at 723-24, 103 S. Ct. at 1692-93 (employee whose questionnaire caused a " 'mini-insurrection' " and interfered with working relationships triggered government interest in administering its workplace)), here, there is no issue raised at this juncture that plaintiff's involvement in his union or in collective bargaining has improperly disrupted his workplace. Therefore, we conclude that plaintiff successfully alleged facts to satisfy the first two parts of the test in Beach and that plaintiff's activities are indeed protected under the first amendment.

We now consider whether plaintiff's right was so "clearly established" that a reasonable person in Sticha's or Zywczyk's position would have known of its existence, so as to negate the applicability of qualified immunity. The Supreme Court has explained the concept of a "clearly established" constitutional right in the context of a qualified immunity claim as follows:

" '[C]learly established' for purposes of qualified immunity means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the

unlawfulness must be apparent.' " Wilson, 526 U.S. at 614-15, 143 L. Ed. 2d at 830, 119 S. Ct. at 1699, quoting Anderson v. Creighton, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 531, 107 S. Ct. 3034, 3039 (1987).

Thus, even though "officials can still be on notice that their conduct violates established law even in novel factual circumstances" (Hope v. Pelzer, 536 U.S. 730, 741, 153 L. Ed. 2d 666, 679, 122 S. Ct. 2508, 2516 (2002)), "case law in a closely analogous area is essential" (Conner v. Reinhard, 847 F.2d 384, 388 (7th Cir. 1988)).

As evidenced by the many citations above indicating that participation in union activities implicates a public concern and is protected by the first amendment, we conclude that plaintiff's first amendment right to participate in the union was "clearly established." Therefore, to the extent defendants Sticha and Zywczyk can be shown to have violated that right by retaliating against plaintiff, their actions were unreasonable, and they are not entitled to qualified immunity.

As noted above, in order to prosecute a successful first amendment retaliation claim, a plaintiff must establish not only that the first amendment protects the speech or association in question, but also that "the speech and associational activities were substantial or motivating factors in the challenged actions taken against him." Beach, 185 F. Supp. 2d at 1236-37. If plaintiff is able to so establish, then defendants may avoid liability "by demonstrating that they would have taken the same actions against plaintiff regardless of his expression of the protected speech or his associational activities." Beach, 185 F. Supp. 2d at 1237. Here, plaintiff's third amended complaint was dismissed before he was able to bring forth any evidence regarding defendants' motives and before defendants were able to rebut that evidence with evidence that they would have reduced

plaintiff's evaluation points and delayed his promotion regardless of his protected activities. Therefore, with respect only to defendants Sticha and Zywczyk individually, we must reverse the dismissal of the third count of plaintiff's third amended complaint and remand the cause for further proceedings so that the parties may address the third and fourth parts of the Beach test.

Finally, we note that plaintiff also sued defendants Sticha and Zywczyk in their official capacities. Because "it is well established that the qualified immunity doctrine does not apply to official capacity claims" (Ruffino v. Sheahan, 218 F.3d 697, 700 (7th Cir. 2000)), qualified immunity does not apply to this aspect of plaintiff's claims, and we must consider whether Sticha or Zywczyk is liable in his official capacity. An official capacity suit against an individual is to be treated as another form of a suit against the governmental entity of which the individual is a part. Kentucky v. Graham, 473 U.S. 159, 167, 87 L. Ed. 2d 114, 122, 105 S. Ct. 3099, 3106, (1985). While section 1983 extends liability only to "persons," and a State is not a "person" within the meaning of the law (Will v. Michigan Department of State Police, 491 U.S. 58, 65-66, 105 L. Ed. 2d 45, 54, 109 S. Ct. 2304, 2309 (1989)), local governmental units, and their officials who are sued in their official capacities, are "persons" within the meaning of section 1983 and can be sued directly under that section (Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690-91, 56 L. Ed. 2d 611, 635, 98 S. Ct. 2018, 2035-36 (1978)). However, since section 1983 does not recognize the theory of respondeat superior as a basis for liability, in order to prevail on an official capacity claim under section 1983, a plaintiff must allege that he or she suffered injuries of a constitutional magnitude as a result of an official policy, custom, or practice. Monell, 436 U.S. at 690, 56 L. Ed. 2d at 635, 98 S. Ct. at 2035-36.

Plaintiff has not alleged that either of Sticha's or Zywczyk's allegedly retaliatory actions--the reduction in his evaluation points or the delay in promoting a replacement for Farley--was a matter of policy, and his claims against Sticha and Zywczyk in their official capacities necessarily fail.

For the foregoing reasons, we affirm the portion of the judgment of the circuit court of Du Page County dismissing the first two counts of plaintiff's third amended complaint. However, we reverse the dismissal of count III with respect to defendants Sticha and Zywczyk in their individual capacities, and we remand for proceedings consistent with this opinion. We affirm the dismissal of count III with respect to all other defendants, including Sticha and Zywczyk in their official capacities.

Affirmed in part and reversed in part; cause remanded with instructions.

GROMETER, P.J., and BOWMAN, J., concur.